UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

COMMUNITY SERVICES FOR THE
DEVELOPMENTALLY DISABLED OF
BUFFALO and HOUSING
OPPORTUNITIES MADE EQUAL, INC.,

           Plaintiffs,

    v.

TOWN OF BOSTON,

           Defendant.

16-CV-359

DECISION & ORDER

---

This action arises under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, 3605, and 5304(b)(2). The plaintiffs seek permanent injunctive relief and damages, alleging discrimination by the defendant for refusing to allow construction of a group home that would serve persons with disabilities.

On June 15, 2016, the defendant moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Docket Item 11. The defendant contends that the plaintiffs failed to obtain a final determination and that the claim therefore is not ripe for adjudication. Docket Item 11-1 at 4. The plaintiffs responded on July 29, 2016, Docket Item 19, and the defendant replied on August 11, 2016, Docket Item 24. At the same time that they responded, the plaintiffs moved to amend their complaint under Federal Rule of Civil Procedure 15(a) to correct a factual misstatement. Docket Item 18.

For the reasons below, the defendant's motion to dismiss for lack of subject matter jurisdiction is GRANTED, and the defendant's motion to dismiss for failure to state a cause of action is DENIED as moot. Because the proposed amendment would not remedy the lack of subject matter jurisdiction, the plaintiffs' motion to amend the complaint is DENIED.

**LEGAL STANDARD**

I.  **SUBJECT MATTER JURISDICTION**

Under Federal Rule of Civil Procedure 12(b)(1), this Court does not have subject matter jurisdiction when it lacks the "statutory or constitutional power to adjudicate [a case or controversy]." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In reviewing a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material factual allegations in the complaint, but [courts] are not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citation omitted).

Because a Rule 12(b)(6) motion is a determination on the merits, a court considering a motion to dismiss under both Rules 12(b)(1) and 12(b)(6) must first decide the jurisdictional question under 12(b)(1). *Magee v. Nassau Cty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## II. RIPENESS

The doctrine of ripeness is rooted in both "Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005). The purpose of the ripeness doctrine is to prevent the courts, through "avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Id.* (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148 (1967)). "Determining whether a case is ripe generally requires [the court] to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 149).

Ripeness determinations in land-use cases begin with the first prong of the test for eminent domain takings: determining whether "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985); *Murphy*, 402 F.3d at 350 ("Following the view of . . . other circuits, we have applied prong-one ripeness to land-use disputes implicating more than just Fifth Amendment takings claims.").[1] For a plaintiff's land-use claim to be ripe, then, the relevant government entity must have taken "a definitive position on the issue that inflicts an actual, concrete injury." *Williamson*, 473 U.S. at 193. Requiring a final, definitive position from the government entity—here, the town—

---

[1] While *Williamson County* has a second prong for determining the ripeness of takings claims in eminent domain cases, that prong does not apply to other claims in land-use cases. *See Murphy*, 402 F.3d at 349.

3

"evinces the judiciary's appreciation that land-use disputes are uniquely matters of local concern more aptly suited for local resolution." *Murphy*, 402 F.3d at 348.

Thus, the plaintiffs must meet a "high burden" and demonstrate that the "government entity . . . has reached a final decision regarding an application . . . to the property at issue." *Sunrise Detox V, LLC v. City of White Plains*, 769 F.3d 118, 121, 122 (2d Cir. 2014). "A non-final decision on how a parcel of land may be used does not ordinarily give rise to an injury that is sufficiently concrete and particularized to satisfy Article III." *Id.* at 122. Federal review of land-use cases is conditioned on a plaintiff submitting at least one "meaningful application" that allows for a final decision by the government entity—not merely the "give-and-take negotiation that often resolves land-use problems." *Id.* at 124; *see Murphy*, 402 F.3d at 348.

## **DISCUSSION**

The defendant offers several reasons why the plaintiffs' claim should be dismissed. First, the defendant argues that this Court lacks subject matter jurisdiction because the plaintiffs never obtained a final determination. Docket Item 11-1 at 4. Second, the defendant argues that Housing Opportunities Made Equal, Inc., lacks standing to bring this claim because it failed to allege an injury-in-fact. *Id.* at 10. Third, the defendant requests that this Court abstain from hearing this claim because there is a related, ongoing proceeding in state court. *Id.* at 12. Fourth, the defendant argues that the complaint does not state a claim upon which relief can be granted. *Id.* at 14. Finally, the defendant asserts that this Court should decline to exercise supplemental jurisdiction over the plaintiffs' state-law claim. *Id.* at 17.

Because this Court finds that it does not have subject matter jurisdiction, that ends the inquiry and this Court will not—indeed, it cannot—address the defendant's remaining contentions.

I. **FINAL DECISION**

The plaintiffs seek "judicial intervention in light of the impermissible and final decision by [the] defendant to deny any proposals to build a group home for four developmentally disabled persons." Docket Item 19 at 1. The plaintiffs contend that the Town of Boston rendered a final decision when the town attorney issued a letter indicating that the town would deny the plaintiffs a building permit. Docket Item 19-6 at 3. As noted above, for this Court to find that the town has issued a final decision, the plaintiffs must have made at least one "meaningful application" for a permit to build the group home. *See Murphy*, 402 F.3d at 348.

But the plaintiffs have not submitted any application for a building permit, let alone a meaningful application. Indeed, the plaintiffs candidly acknowledge that they have not yet applied for a building permit, as indicated in their motion to amend the complaint. Docket Item 18-1 ¶ 9. Because the plaintiffs have not requested a building permit, the town code enforcement officer never had an opportunity to approve or deny an application. Docket Item 11-2. Likewise, the relevant town agencies never had a formal opportunity to investigate the proposed plan and present findings. *See Murphy*,

402 F.3d at 352. In other words, the plaintiffs have not given the town an opportunity to make a final decision.[2] *See id.*

The plaintiffs argue that the town attorney's letter demonstrates that the town has made a final decision not to allow construction of the group home. Docket Item 19 at 3. And the letter does state that "several individuals have requested a building permit and have been denied over the 50 year period . . . [and] CSDD will not be the first to get a permit." Docket Item 19-6 at 4. But a letter from the town attorney taking a position on whether a permit will be issued if an application is made is not the denial of an application for a permit. What is more, because the letter is addressed not to either or both plaintiffs but to the Commissioner of the New York State Office of People with Developmental Disabilities, *see* Docket Item 19-6, the letter cannot be a final decision on the plaintiffs' request to build a group home. Contrary to the plaintiffs' reading, the letter suggests that the concerned parties are engaged in "give-and-take negotiations" over the use of land—not that the town has made a final decision denying construction of the group home. *See Murphy*, 402 F.3d at 352.

Finally, because the plaintiffs have not applied for a building permit, they have yet to suffer an injury. In *Sunrise Detox*, the Second Circuit noted that the plaintiff had not yet suffered an injury and must "prove that [the court] can look to a final, definitive position from the city regarding its application before [the court] may entertain its claims." 769 F.3d at 124 (quoting *Murphy*, 402 F.3d at 347). The same is true here.

---

[2] And the plaintiffs' proposed amended complaint only reinforces the conclusion that their claim is premature. The amendment seeks only "to correct their pleadings to remove any implication that a permit application was filed." Docket Item 18-1 ¶ 9; Docket Item 18-3 ¶ 32. The proposed amendment underscores why the plaintiffs' claim is not ripe.

6

## II. FUTILITY

The plaintiffs also argue that, in light of the town attorney's letter, submitting an application would be futile. *See Southview Assoc., Ltd. v. Bongartz*, 980 F.2d 84, 99 (2d Cir. 1992). In the pursuit of a final decision in land-use cases, plaintiffs may be excused from the usually required procedures if they can demonstrate, by more than mere allegations, that those procedures would be fruitless. *Id.*; *Hones 52 Corp. v. Town of Fishkill*, 1 F. Supp. 2d 294, 301 (S.D.N.Y. 1998); *see Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1012 n.3 (1992) (stating that an application for a variance is not required when it would be "pointless"). Here, the plaintiffs contend that even if the letter from the town attorney was not a final decision, the letter shows that their application for a building permit would be pointless. Docket Item 19 at 5.

The Second Circuit has not determined the precise contours of the futility exception, but decisions from other circuits are instructive and have adopted a narrow interpretation. *See Goldfine v. Kelly*, 80 F. Supp. 2d 153, 159 (S.D.N.Y. 2000). For example, "[t]he First Circuit has noted that 'a sort of inevitability is required: the prospect of refusal must be certain.'" *Id.* (quoting *Gilbert v. City of Cambridge*, 932 F.2d 51, 61 (1st Cir. 1991)). Likewise, the Ninth Circuit has noted that "[t]his exception was created to 'protect property owners from being required to submit multiple applications when the manner in which the first application was rejected makes it clear that no project will be approved.'" *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 349-50 (S.D.N.Y. 2000), *aff'd*, 252 F.3d 645 (2d Cir. 2001) (quoting *Southern Pacific Transportation Co. v. City of Los Angeles*, 922 F.2d 498, 504 (9th Cir.1990)).

So before invoking the futility exception, courts should require a plaintiff to demonstrate: 1) that the plaintiff filed at least one meaningful application; and 2) that the

denial of another application is inevitable because the government entity "used—and will in all likelihood continue to use—repetitive and unfair procedures, thereby avoiding a final decision."  *Sherman v. Town of Chester*, 752 F.3d 554, 563 (2d Cir. 2014).

The plaintiff bears a high burden to demonstrate futility.  *Id.*  But if a plaintiff can show that the government entity's conduct is "so unreasonable, duplicative, or unjust as to make [it] farcical, the high standard is met."  *Id.*  In evaluating such conduct, courts may consider the defendant's hostility, delay, or obstruction.  *See Homefront Org.*, 570 F. Supp. 2d at 407.  But mere allegations "of hostility or bad faith are insufficient."  *Bloomburg Jewish Educ. Ctr. v. Vill. of Bloomingburg*, 111 F. Supp. 3d 459, 479 (S.D.N.Y. 2015).  In other words, the futility exception does *not* apply "merely [when] public officials are hostile to the proposal at issue."  *Id.*

Here, as noted above, the plaintiffs admittedly have not filed *any* application, let alone a meaningful one.  For that reason alone, the futility exception does not apply.  *Sunrise Detox*, 769 F.3d at 124 (The plaintiff's "own failure to 'submit [ ] at least one meaningful application' . . . prevents us from determining whether the board 'has dug in its heels and made clear that all such applications will be denied.'" (quoting *Murphy*, 402 F.3d at 348, 349));  *see Kittay*, 112 F. Supp. 2d at 350 ("Therefore, at least one meaningful application for development must be made in order to invoke the futility exception and consider a claim ripe for adjudication.").

Even assuming the plaintiffs had filed an application, they have failed to demonstrate that the Town of Boston used repetitive or unfair land-use procedures to avoid a final decision.  *See Sherman*, 752 F.3d at 563; *Kittay*, 112 F. Supp. 2d at 349, 350.  In *Sherman*, by contrast, the plaintiff dealt with a "labyrinth of red tape." 752 F.3d

at 557.  Over a ten-year span, the Town of Chester forced the plaintiff to revise his variance application several times, pay millions in additional costs, and redevelop his original project.  *Id.* at 558-60.  After eight years of trying to get a variance, the plaintiff filed suit in federal district court.  *Id.* at 559.  On appeal, the Second Circuit determined that the town's conduct constituted a pattern of "repetitive and unfair procedures [to] avoid a final decision."  *Id.* at 563.  The plaintiff therefore satisfied his burden of showing that further attempts to obtain a final decision from the town—in satisfaction of the finality requirement—would be futile.  *Id.* at 561.

But that analysis bears little resemblance to the situation here.  Here, though the town attorney's letter may reference a history of refusing permits, it does not evidence repetitive or unfair procedures designed to avoid a final determination with respect to the property at issue.  *See Kittay*, 112 F. Supp. 2d at 350.

The Southern District's decision in *Kittay* illustrates the point.  In *Kittay*, the plaintiff argued that an application for a land-use permit would be futile because the government agency "regularly den[ied] development applications and institut[ed] litigation against developers to halt previously approved construction."  *Id.* at 349.  But an agency's history of denying different developers' applications and commencing litigation does not qualify as repetitive and unfair procedures.  *See id.*  In other words, "a litigant [cannot] maintain an otherwise premature lawsuit . . . [by] claiming that defendants typically deny permit applications."  *Id.*

Courts should not supplant local government entities or "become zoning boards of appeal."  *Sherman*, 752 F.3d at 563 (quoting *Sullivan v. Town of Salem*, 805 F.2d 81, 82 (2d Cir. 1986).  For that reason, courts reviewing land-use cases must undertake the

9

delicate task of separating local governmental procedures that are "merely frustrating" from those that are "unfair or . . . futile to pursue." *Sherman*, 752 F.3d at 563. Here, the plaintiffs have failed to establish unfair or repetitive procedures in this otherwise premature lawsuit. Indeed, the town attorney's letter is the only evidence the plaintiffs have offered to show that the town's procedures would frustrate any attempt to obtain a building permit. Because a meaningful application has not been made, the Court has no way of knowing whether the language of the letter is posturing, negotiating strategy, or something else.[3]

Accordingly, the futility exception does not excuse the plaintiffs from applying for a building permit and obtaining a final determination.

## **CONCLUSION**

Because this matter is not ripe for adjudication, this Court does not have subject matter jurisdiction. The plaintiffs' proposed amendment to the complaint would not cure the ripeness issues, and the Court therefore DENIES the plaintiffs' motion to amend the complaint, Docket Item 18. The Court GRANTS the defendant's motion to dismiss for lack of subject matter jurisdiction, Docket Item 11, and denies the remainder of the

---

[3] In addition to stating the town's intent to deny a permit, the letter also noted the town's concerns with the group home's increasing traffic congestion and overburdening the public utilities and emergency services. Docket Item 19-6. Presumably, such concerns are resolvable and negotiable.

defendant's motion as moot.  The Clerk of Court shall dismiss the complaint and close the case.

    SO ORDERED.

Dated:    April 16, 2018
          Buffalo, New York

                                    *s/Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE